Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNE KOCHANEK,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED FINANCIAL BANCORP, INC., WILLIAM H. W. CRAWFORD, IV, ROBERT A. STEWART, JR., RAYMOND H. LEFURGE, JR., PAULA A. AIELLO, MICHAEL A. BARS, MICHAEL F. CROWLEY, KRISTEN A. JOHNSON, CAROL A. LEARY, and KEVIN E. ROSS,<br><br>  Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marianne Kochanek ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.     This is an action against United Financial Bancorp, Inc. ("United Financial" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between United Financial and People's United Financial, Inc. ("People's United").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and subsequent damages took place in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of United Financial common stock.

7. Defendant United Financial operates as the holding company for United Bank that provides retail, commercial, and consumer banking services to individuals, families, and

businesses. As of June 30, 2019, United Financial had 58 branches and 72 ATMs. United Financial is a Connecticut corporation. United Financial's common stock trades on the NASDAQ Global Select Stock Market ("NASDAQ") under the ticker symbol, "UBNK."

8. Defendant William H. W. Crawford IV ("Crawford") is the Chief Executive Officer and a director of United Financial.

9. Defendant Robert A. Stewart, Jr. ("Stewart") is the Chairman of the Board of United Financial.

10. Defendant Raymond H. Lefurge, Jr. ("Lefurge") is Vice Chairman of the Board of United Financial.

11. Defendant Paula A. Aiello ("Aiello") is a director of United Financial.

12. Defendant Michael A. Bars ("Bars") is a director of United Financial.

13. Defendant Michael F. Crowley ("Crowley") is a director of United Financial.

14. Defendant Kristen A. Johnson ("Johnson") is a director of United Financial.

15. Defendant Carol A. Leary ("Leary") is a director of United Financial.

16. Defendant Kevin E. Ross ("Ross") is a director of United Financial.

17. Defendants Crawford, Stewart, Lefurge, Aiello, Bars, Crowley, Johnson, Leary, and Ross are collectively referred to herein as the "Individual Defendants."

18. Defendants United Financial and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

19. People's United is the holding company of People's United Bank. People's United provides consumer, commercial, insurance, retail investment and wealth management services to personal and business customers. As of June 30, 2019, People's United had over 400 branches

across six states, including New York, in addition to approximately 600 ATMs. People's United's principal executive offices are located in Bridgeport, Connecticut. People's United common stock trades on the NASDAQ under the ticker symbol, "PBCT."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On July 15, 2019, People's United issued a press release announcing that it had entered into a merger agreement to acquire United Financial in an all-stock transaction. Under the terms of the merger agreement, United Financial shareholders would receive 0.875 shares of People's United stock for each share of United Financial. The press release states, in pertinent part:

**People's United Financial To Acquire United Financial Bancorp, Inc.**

BRIDGEPORT, Conn., July 15, 2019 /PRNewswire/ -- People's United Financial, Inc. (NASDAQ: PBCT), the holding company for People's United Bank, N.A., announced today an agreement to acquire United Financial Bancorp, Inc. (NASDAQ: UBNK), the holding company for United Bank, in a 100% stock transaction valued at approximately $759 million. Completion of the transaction is subject to customary closing conditions, including receipt of regulatory approvals and the approval of United Financial Bancorp, Inc. shareholders.

\* \* \*

Under the terms of the agreement, which has been approved by both companies' boards of directors, United Financial Bancorp, Inc. shareholders will receive 0.875 shares of People's United Financial stock for each United Financial Bancorp, Inc. share. The transaction is valued at $14.74 per United Financial Bancorp, Inc. share, based on the closing price of People's United's common stock on July 12, 2019.

Keefe, Bruyette & Woods, Inc. served as financial advisor to People's United and Simpson Thacher & Bartlett LLP served as legal counsel to People's United.

Sandler O'Neill & Partners served as financial advisor to United Financial Bancorp, Inc. and Sullivan & Cromwell LLP served as legal counsel to United Financial Bancorp, Inc.

21. On September 6, 2019, Defendants filed with the SEC a Schedule 14A Definitive Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in

4

connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

22. The Proxy Statement, which recommends that United Financial shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) United Financial's and People's United's financial projections; (ii) the financial analyses performed by the Company's financial advisors, Sandler O'Neill & Partners ("Sandler") and RP Financial, LC ("RP"); (iii) pertinent details concerning RP's engagement by United Financial; and (iv) the sales process leading up to the Proposed Transaction.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Certain Financial Forecasts of United Financial; (ii) Background of the Merger; (iii) United Financial's Reasons for the Merger; Recommendation of United Financial's Board of Directors; (iv) Opinion of United Financial's Financial Advisor; and (v) RP Financial Analyses.

24. The shareholder vote on the Proposed Transaction is scheduled for October 22, 2019. Unless and until the material misstatements and omissions (referenced below) are remedied, United Financial shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning United Financial's and People's United Financial Projections

25. The Proxy Statement omits material information concerning United Financial's and People's United's financial projections.

26. The Proxy Statement fails to disclose: (1) United Financial's estimated dividends

5

per share for the years ending December 31, 2019 through December 31, 2023, as confirmed with the senior management of United Financial; (2) People United's estimated dividends per share for the years ending December 31, 2019 through December 31, 2020, based on guidance provided by the senior management of People's United; and (3) assumptions relating to purchase accounting adjustments, cost savings and transaction expenses, as well as certain assumptions related to balance sheet restructuring activities following the closing of the merger, as provided by the senior management of People's United.

27. The projections of future dividends are of particular importance to United Financial shareholders. Investors turn to high-yield, dividend-paying stocks to generate income. Given that the Company's dividend yield is a substantial 3.4%, United Financial shareholders would find it material to know the Company's projected dividend yield in determining whether to vote in favor of the Proposed Transaction. United Financial investors would also want to know People United's estimated dividends per share prior to voting on the merger because they would become People United's stockholders if the merger is approved. Without the aforementioned dividend forecasts and other financial information, the Company's shareholders will not be able to properly assess the fairness of the merger or determine how much weight, if any, to place on the financial advisors' opinions.

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to United Financial shareholders.

**2. Material Omissions Concerning Sandler's and RP's Financial Analyses**

29. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by the Company's financial advisors, Sandler and RP.

30. The Proxy Statement fails to disclose the individual multiples and financial metrics

for the companies observed by Sandler in its "*Comparable Company Analyses*" and "*Analysis of Selected Merger Transactions*."

31. The Proxy Statement fails to disclose the following concerning Sandler's "*Net Present Value Analyses*" of United Financial: (1) the estimated dividends per share for United Financial for the years ending December 31, 2019 through December 31, 2023, as confirmed with senior management of United Financial; (2) Sandler's basis for applying price to 2023 earnings per share multiples ranging from 11.0x to 16.0x and price to December 31, 2023 tangible book value per share multiples ranging from 105% to 180%; (3) the terminal values for United Financial; and (4) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0%.

32. The Proxy Statement fails to disclose the following concerning Sandler's "*Net Present Value Analyses*" of People's United: (1) the net income and earnings per share estimates for People's United for the years ending December 31, 2019 and December 31, 2020; (2) the long-term earnings per share growth rate for the years thereafter; (3) the estimated dividends per share for the years ending December 31, 2019 through December 31, 2020; (4) Sandler's basis for applying price to 2023 earnings per share multiples ranging from 10.5x to 13.0x and price to December 31, 2023 tangible book value per share multiples ranging from 120% to 195%; (5) the terminal values of People's United; and (6) the individual inputs and assumptions underlying the discount rates ranging from 8.0% to 12.0%.

33. The Proxy Statement fails to adequately disclose in the following concerning Sandler's "*Pro Forma Merger Analysis*" of People's United, assuming the merger closes at the end of the fourth calendar quarter of 2019: (1) the assumptions relating to purchase accounting adjustments, cost savings, transaction expenses, and balance sheet restructuring activities; (2) the

7

extent to which the Proposed Transaction could be accretive to People's United's estimated earnings per share in the years ending December 31, 2020, December 31, 2021, December 31, 2022, and December 31, 2023; (3) the extent to which the Proposed Transaction could be dilutive to People's United's estimated tangible book value per share at closing, December 31, 2019, and December 31, 2020; and (4) the extent to which the Proposed Transaction could be accretive to People's United's estimated tangible book value per share at December 31, 2021, December 31, 2022, and December 31, 2023.

34.     With respect to RP's "Alternative Stand-Alone Planning Scenario," the Proxy Statement fails to disclose (1) the individual inputs and assumptions underlying the 11.5% discount rate; (2) RP's basis for applying a 12 times earnings multiple to the projected trailing 12-month earnings per share; and (3) the names of the "regionally and financially comparable public companies" and price multiples observed.

35.     With respect to RP's "Merger Market Update Analysis," the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by RP in its analysis.

36.     The valuation methods, underlying assumptions, and key inputs used by Sandler and RP in rendering their purported fairness opinions must be fairly disclosed to United Financial shareholders. The description of Sandler's and RP's fairness opinions and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, United Financial shareholders are unable to fully understand Sandler's and RP's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to United Financial shareholders.

### 3. Material Omissions Concerning RP's Engagement

37. United Financial's Board engaged RP to provide various financial analyses, including an independent evaluation of the Company's financial projections, an assessment of potential alternative strategies United Financial could implement to enhance shareholder value as an independent company, and to evaluate United Financial's standalone value as compared to the value which might be generated in the proposed merger:

> United Financial's board of directors initially engaged RP Financial on April 23, 2019 to provide certain strategic planning services in conjunction with its assessment of an internal strategic plan prepared by United Financial's senior management including the independent evaluation of the forecasts that had been prepared by United Financial's management (which we refer to in this section as "United Financial management's forecasts" and are described in the section entitled "—Certain Financial Forecasts of United Financial" beginning on page 70) and related implications to shareholder value, as well as to assess potential alternative strategies that United Financial could feasibly implement to enhance shareholder value as an independent company. United Financial's board of directors subsequently engaged RP Financial to also evaluate United Financial's standalone value as compared to the value which might be generated in the proposed merger (which we refer to as the "subsequent planning analyses"). RP Financial also reviewed financial and other benefits of the merger, as well as key considerations in the event that United Financial did not complete the merger and continued to operated independently instead.

38. The Board explicitly relied on RP's financial analyses in reaching its unanimous decision to approve and adopt the merger agreement and to recommend that United Financial's shareholders approve the merger proposal. More specifically, the Board considered "the additional risks associated with executing on any of the alternatives developed by United Financial senior management and RP Financial to support a stand-alone strategy," as well as "the financial analyses of RP Financial regarding the potential value of United Financial on a stand-alone basis as compared to the value in connection with the merger."

39. Despite RP's key role in the Proposed Transaction, the Proxy Statement fails to disclose the amount of compensation RP will receive in connection with its engagement, including

the amount that is contingent upon consummation of the Proposed Transaction.

40. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to United Financial shareholders.

### 4. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction

42. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

43. The Proxy Statement provides that United Financial and Company B entered into "a customary confidentiality agreement, which contained a customary standstill provision."

44. The Proxy Statement, however, fails to disclose whether this agreement contained a standstill provision with a "don't ask, don't waive" ("DADW") provision (including its time of enforcement) that would preclude Company B from making a superior offer for United Financial.

45. The omission of this information is troubling. On September 4, 2018, Company B submitted an indication of interest to acquire United Financial in a stock-for-stock merger which represented an approximately 24.4% to 29.2% premium based on share prices of the companies at the time. This was higher than People's United's current offer, as well as People United's previous August 31, 2018 stock-for-stock offer which represented an approximately 22.9% premium on the share prices of the companies at the time. United Financial's deal with Company B ultimately fell

through in October 2018 after United Financial and Company B decided that a business combination would not generate the financial benefits they had previously anticipated. Nevertheless, United Financial shareholders would find it material to know whether Company B may now submit a superior proposal for the Company.

46. Without this information, United Financial shareholders may have the mistaken belief that Company B was or is permitted to submit superior proposals for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable United Financial shareholder would want to know, prior to voting their shares, whether Company B, which was once actively interested in acquiring the Company at a greater premium than People's United's previous and current offer, is or was foreclosed from submitting a superior proposal.

47. After discussions with Company B terminated in October 2018, the Company attempted to resurrect a potential business combination with People's United, but at that time People's United was not interested in a potential business combination with United Financial because it was pursuing another acquisition. From March through May 2019, United Financial's board of directors met several times to discuss strategic alternatives.

48. Further, in May 2019, the Company's Board authorized the Company's senior management and Sandler to solicit preliminary indications of interest regarding a potential business combination from five financial institutions identified by Sandler, including People's United. Between May 14, 2019 and May 17, 2019, Sandler's representatives contacted People's United and the other four selected financial institutions. According to the Proxy Statement, Sandler engaged in "preliminary, confidential discussions with each of these institutions to determine whether there was an interest in pursuing a potential business combination with United Financial."

Accordingly, on behalf of United Financial, Sandler and these entities decided to keep their discussions "confidential."

49. The Proxy Statement, however, fails to mention whether these entities executed a confidentiality agreement with United Financial that contained standstill provisions with DADW provisions. As explained more fully above, United Financial shareholders would find this information material before the shareholder vote on the Proposed Transaction, as they would want to know whether any of these entities are subject to agreements that would limit their ability to submit a superior offer to United Financial.

50. Further, and as described more fully above, United Financial received bids from Company B and People's United in 2018. The Proxy Statement provides the exchange ratio contemplated by the proposals, but fails to disclose the implied value of those proposals. Without this information, United Financial shareholders are unable to fully assess and value the offers received by United Financial.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to United Financial shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

54. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

55. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

56. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

62. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 20, 2019

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*